I want to welcome everyone today to the Fourth Circuit Court of Appeals. Our first case, United States v. Burns-Johnson. Ms. Hester, I'll be pleased to hear from you. May it please the Court. North Carolina robbery with a dangerous weapon is not a violent felony under the ACCA's force clause for two reasons. First, it does not have an element requiring the intentional use of force. And second, it does not have an element requiring that violent physical force be used. At the outset, it's important to understand the analytical framework for evaluating the North Carolina offense under the force clause. As Aparicio Soria and Torres Miguel make clear, the reasonable probability test from the Duenas-Alvarez opinion does not apply to force clause inquiries. Instead, the key here is the elements of the offense. The Court may look only at the statutory definition of the prior offense and state cases interpreting that statutory definition. But doesn't Dr. do precisely that, look at the reasonable probability in effect? Dr. does, and I think that Gardner, the Gardner case, carved out an exception for that for common law offenses. Dr. is a common law offense. That's my understanding of what the Court did in Gardner, and then Dr. cites to Gardner. But in any event, clearly the en banc court in Aparicio Soria was relying on Torres Miguel to avoid applying the reasonable probability test. So that is the binding law for this court. With respect to the intent element. So you're saying that it doesn't, reasonable probability doesn't apply to statutory offenses? Right. That's my argument. With respect to the intent element, an offense cannot satisfy the act of force clause if it may be committed with a reckless or negligent use of force. And the robbery with a dangerous weapon statute does not include any element of intent related to the use of force. The only intent element that North Carolina has ever required for this offense is the intent to permanently deprive the owner of his property. Isn't this distinction though one of specific intent versus a general intent? You have to have the specific intent to deprive the owner of property. But the general intent is different, isn't it? And that seems to me to be potentially where your argument trips up. Well, Judge Keenan, you may be referring to the Docker case where they in fact, the Court did look at what the general intent was in that case. And I think that's distinguishable because in Docker the Court was looking at a South Carolina common law offense that had relied heavily on federal law and the federal bank robbery statute. But every crime is a general intent crime unless it requires a specific intent, is it not? Whether it's statutory or common law. Right, but there is a specific intent requirement here. With regards to the larceny element. And the Court has to look at how the state defines its offense and it has never required a general intent with respect to this crime. Yes, but what I'm saying, isn't there a threshold that every crime is a general intent crime unless there is a specific intent component? And it can be both. In other words, you can have the general intent crime, can you not, with also a one other requirement requiring a specific intent like burglary with the intent to commit larceny, burglary with the intent to commit assault. That doesn't make the overall, you're saying this makes the overall crime not an intent? Not an intentional use of force. That's what I'm saying, yes. Because there is no North Carolina law applying a general intent to this crime, when North Carolina courts instruct juries on this offense, they do not instruct juries that they have to find a general intent or knowledge that the use of force would be used. Although of course we've held it that this statute does, albeit in an unpublished opinion. That's right, that's right. And I would point out with that unpublished opinion, I went back and looked at the briefs and there was a one paragraph argument in that case about why robbery with a dangerous weapon was not a crime of violence. So the court really did not have any occasion to address the arguments that I raised. Was that case argued? I don't believe it was, no. Okay, so would you say second degree murder isn't a crime of violence? I don't know the answer to that. I don't understand what you're saying. But I would like to point out that if the court did delve into state case law with respect to this intent element, the case law in fact demonstrates a reasonable probability that state prosecutors would apply this statute in the case of a reckless or negligent use of force. And the North Carolina Court of Appeals opinion in State v. Hill demonstrates how this could happen. But you didn't tell us, I thought you just told us we couldn't rely on reasonable probability with the statutory offense. I believe that that is correct, but I want to point out to the court that if the court did apply that, in fact there is a reasonable probability here that North Carolina would apply this offense to the conduct that in State v. Hill I would like to direct the court's attention to that because there the dangerous weapon was a car. The defendant's accomplice drove it toward the store manager while they were fleeing from a theft offense. And that was sufficient to support a conviction of robbery with a dangerous weapon because a person commits that offense when the weapon is used after the taking of property during flight as long as it's part of a continuous course of conduct. So in Hill there wasn't any determination of the driver's intent. All that mattered was that she drove the car in a way that endangered a person's life. But that is very similar to the Ninth Circuit factual scenario in Dixon which the court dismissed in Docter because in Docter there wasn't any South Carolina law applying that offense to a similar set of facts. But here in fact the facts are quite similar because in Dixon the State court decision held that the defendant had committed robbery after hitting the victim with a car while fleeing from the crime. State v. Hill is very similar and it demonstrates that if that Ninth Circuit set of facts occurred in North Carolina, in fact North Carolina courts would apply robbery with a dangerous weapon to that set of facts. Ms. Hester, what about the statutory language itself and the linkage that is specifically there with the use of the word whereby? Any person having in possession with the use or threatened use of any firearm or dangerous weapon whereby the life of a person is endangered or threatened? Why isn't that linkage with the statute itself and the use of the word whereby cut against your position? I believe whereby is a results oriented word. Whereby is the result of the threatened use of the weapon? The use or threatened use? The use or threatened use of the weapon whereby a particular result has to be obtained. So it is still a results oriented. As a result of the use or threatened use of the firearm, so why doesn't that? It doesn't have to be a firearm. Let me go into that. Or other dangerous weapon. Or other dangerous weapon. So the statute doesn't require an element of violent physical force here because the offense can be committed by employing a substance without violent force that endangers or threatens a person's life. And the statute focuses on causation of injury in two respects. Right, but how can you, and I don't mean to cut you off, but how can you rob somebody by poison? I mean you can assault somebody by using poison. Well, actually. But how can you rob somebody? The person is giving up the property in response to the threat. So if you're poisoning, you're generally doing that, aren't you, by unwittingly? In terms of the recipient of the poison? No, and I cited, there are two states that have addressed this situation. Also, Florida has a pattern jury instruction addressing robbery by poisoning. And the way that it would apply is when a person disables the victim by using poison and then taking the property. But don't we have, and I'm not finding the site right now, don't we have North Carolina case law specifically suggesting that the sprinkling of poison in a drink, for instance, doesn't fit the statutory definition? There is not North Carolina case law on that. The only case law I found dealing with poison in North Carolina was State v. Alderman, which was assault with a deadly weapon by the wife poisoning the husband's coffee. But there is not an on-point case in North Carolina. But I would direct the court's attention back to the definition itself of dangerous weapon because it's defined as, includes a substance which is likely to produce death and great bodily harm, which is in itself a results-oriented definition. And then the robbery with the dangerous weapon statute itself continues this results-oriented analysis by focusing on the result of endangering or threatening a person's life, not on the amount of physical force used. So this makes the statute broad enough, as with the statute in Torres-Miguel, to allow a conviction if a person endangers or threatens another person's life with the use of a substance such as poison or drugs. You're right. I was referring to the Supreme Court opinion in Casselby that the use of force is not the act of sprinkling poison in the victim's drink. Right. And of course that's distinguishable here because that was the misdemeanor crime of violence, which was the common law definition of force. And Casselman specifically declined to extend it to the definition of crime of violence. Although, as Judge Keenan points out and the courts have noted, it's going to be a pretty rare bank robber who's going to commit the offense by threatening to inject someone with poison or put it in their coffee. Right. But then again, the bank robbery elements are different because bank robbery requires that element of force. But the North Carolina robbery with a dangerous weapon statute doesn't because it would permit you to use a substance as a dangerous weapon, which can be poison. And as these cases from Alabama and California demonstrate, that that is a known way that people commit robbery by slipping a sedative in a person's drink and then taking their There's really no reason to think that North Carolina would not apply robbery with a dangerous weapon under that set of facts because the dangerous weapon definition fits and the time proximity also fits. So North Carolina's results driven definition of dangerous weapon accompanied by that results driven statute would permit prosecution of robbery committed by drugging the victim as robbery with a dangerous weapon. So the North Carolina offense of robbery with a dangerous weapon is not a violent felony under the ACCA and the court should vacate Burns Johnson's mandatory 15 year sentence. Thank you. Ms. Ray. May it please the court. North Carolina's robbery with a dangerous weapon offense is a violent felony. How do you address this Hester's poison scenario? In two ways. First of all, I would like for this court to consider the difference, the language in Torres Miguel at pages 168 to 69 of that opinion and compare that with the Supreme Court's decision in Castleman at page 1415 and what the court said in Castleman is that the administration of poison is the use of force and they were focusing on what is the term use mean and compared it to just as pulling the trigger of a gun. It's not the pulling of the trigger that is the use of force. It's the impact of the bullet on the body. Same, the sprinkling of the poison is not the use of force. It's the impact of the poison on the body. That's from the Supreme Court in Castleman. Now if one compares that to Torres Miguel and the language that came before Castleman, the court said the defendant can violate statutes by threatening to poison another which involves no use or threatened use of force. They're just in conflict. And to the extent they're in conflict, Torres Miguel's length, that can't stand. The second way, so I would respectfully suggest that Castleman overrules Torres Miguel on that discrete question of whether or not the use of poison constitutes at least the threatened use of force because it's not the sprinkling, it's the impact on the body. The other difference is that North Carolina's statute is not a results-oriented statute. It is not similar to the threat statute that was at issue in Torres Miguel. In Torres Miguel, the statute was someone who threatens to commit an offense that would cause or result in serious bodily injury. Here we have an offense that requires the use of a dangerous weapon. So it is not a results-oriented statute. It requires the use and the volitional use. The other point that I would make with respect to poison or I guess really the mens rea issue is the Supreme Court in Boise made clear that the term use is a volitional, requires volition. So that's why in the context of 922G9, the court held that the reckless use of an assault offense, a domestic violence offense that could be committed recklessly involved the use of force. Again, interpreting that word use, not the word violence, which the court has held can be interpreted differently in different contexts. Because if one requires violent force in the domestic violence context, you have then carved out 35 or more states from what wouldn't be violent. So the term violence has been really interpreted contextually. The term use hasn't been. The term use is a volitional term and it requires at least, recklessness satisfies that term. So both the violent force argument and the mens rea argument fail because on the one hand North Carolina requires at least the threatened use of force through the employment of a dangerous weapon. Can you help me with the reasonable probability test and whether there in your view is a basis for distinguishing its utilization in a common law offense and a statutory offense? There is no basis for that distinction, Your Honor. And the reason that I say that is in a common law offense, what we are looking at is how a court defines its offense and also how it applies it. So in Gardner, for example, the court looked at how North Carolina has actually applied its common law robbery offense. And then in Doctor, looked at the exact same offense essentially, South Carolina's version of common law robbery, which is strong arm robbery, and how it is actually applied. We have to do the same thing with a statutory offense. We have to look at how the court actually applies that statute. How does it apply it in real terms? And so the realistic probability, there is just no basis for a distinction between a common law offense and a statutory offense. The court has made clear that it applies in the elements clause or force clause context. That was Gardner, that was Doctor. So there is no longer an argument that it doesn't apply when interpreting that statute. And in no court, not in Doctor nor in Gardner, did this court suggest a distinction between common law offenses and statutory offenses. And it just doesn't make sense that there would be one. Because in both cases, this court has to consider how the court actually applies that statute. We also have to look at the statutory elements. Absolutely. That's the beginning point. No doubt. But if you look at the statutory elements and it doesn't exactly say, then this court has to look at, or it tells us that you have to look to the state court's decisions. And that is what the court did in Gardner. And so I don't think that there is any basis for distinction. I would also respectfully suggest that even if there were, I'm not sure that it would make any difference. At the end of the day, we don't have any North Carolina decisions that suggest that this negligently or accidentally. And I would note that the decision that Burns-Johnson reports that Ms. Hester talked about in Hill, where this is the case that they're holding up as an example of how this offense can be committed accidentally, was a person who tried to run over the victim. So there was no accidental conduct in Hill. And there is no case in which... That's the case they cited that... Yes, sir. And also in the reply brief. And that is just not a case that involved accidental conduct in any way. So what they really are relying upon is a California case, an Alabama case, but... They're also relying on aldermen too, right? Yes. And aldermen was the sprinkling of the poison. And there was no accidental. So that's not really a mens rea issue. Aldermen is really more... It's the use of a weapon. Exactly. And I suggest that Castleman takes care of that for us. I also would suggest that there's no case in which the North Carolina courts have upheld a robbery with a dangerous weapon offense in the context of a poisoning. We don't have that case. And it may be true that in some situations one would not need the case, but I would respectfully suggest that McNeil, in this court's decision in McNeil, recognized that robbery isn't something that is ordinarily committed. Oh, it's counterintuitive. I agree. However, but if we're looking at the elements, and you're writing the opinion of the court, how do you distinguish the interpretation of aldermen regarding the use of a deadly weapon? Well, aldermen says that in the assault context, it is the use of... I don't remember the exact elements of assault in North Carolina, but it does say that one can assault with poison, fair enough. My response to that is Castleman, first and foremost. That Castleman makes clear that sprinkling of poison isn't really the use of force. It's the act of the poison on the body. And that it is consistent. That it is, in fact, a use or threatened use of force to poison someone. And so even if we say that robbery in North Carolina could be committed, and I would suggest that's not... We shouldn't really... I wouldn't suggest the court has to go there, because I think that without any decisions, we can look at Docter and we can look at McNeil, which say, look, there has to be something out there that tells us this is the way North Carolina would apply that law. An alderman is an assault offense, not a robbery offense. So I think that this court should... I don't think that it's necessary that this court wrestles with the difference between what Castleman says and what Torres-Miguel says, but if this court reaches that, I would request that the court consider the language on those pages that I showed, that I mentioned, because I think that that shows that there is at least one irreconcilable difference in those two opinions. Your Honors, the North Carolina courts, as I've reviewed these decisions, this is not an offense that... They've reversed many convictions for robbery with a dangerous weapon, where, for example, the person had an unloaded firearm. It requires the use of something that can kill you, essentially. This is not an offense that, at least from my review of a lot of cases, is lightly upheld. That doesn't necessarily go to the specific questions in the case, but I offer that. It looks to me like this is a pretty serious offense in North Carolina, and they do require the active employment of a dangerous weapon that can kill you in the process, in the process of robbing you. So if there are no further questions, the government requests the court affirm the judgment of the District Court and the application of the Armed Career Criminal Enhancement in this case. Thank you, Your Honor. Thank you, Ms. Ray. Ms. Hester? The government asked this court to find that Castleman overruled or abrogated Torres-Miguel, but this court already considered that argument in McNeil, and in a footnote said that that is incorrect. And Castleman, as I said before, specifically applied only to the common law definition of force and reserved the question of whether the results-oriented analysis would apply to violent force. Do you have any authority or explanation for why we would treat the common law offense differently from the statutory offense? I'm not sure I understand the question. Well, I'm following up on the fact that you posit that doctor and that doctor does not apply because it's in the context of a common law offense, that the reasonable probability test. The reasonable probability test. Yes, and I'm trying to understand, because I find this extremely confusing, I am trying to understand why you believe, who, what instructs us that that should make a difference is what I'm... I'm just trying to reconcile Aparicio-Torres-Miguel with Gardner and doctor, and Gardner does specifically say, you know, it does specifically say in the context of common law offenses we have to look to state court cases to decide what the minimum culpable conduct is. So I mean, that's the only distinction, you know, the only way I can reconcile those two cases. But in any event, Aparicio-Torres-Miguel, of course being an en banc decision of the court, governs and it adopted the Torres-Miguel analysis. Thank you. With respect to the argument that voisine requires a volitional use of force, voisine, like Castleman, specifically declined to address the context of crime of violence outside of common law definition of use of force. It declined to address whether recklessness is sufficient for a crime of violence. This court has said that recklessness is not enough, and that precedent governs. But in any event, this statute doesn't even require more than negligence. So even if voisine did change that scenario, still negligence would be enough and the statute allows negligent use of force to violate robbery with a dangerous weapon. The government argues that Hill is not a case that involved accidental conduct, but actually there's no determination of what the level of intent was in that case, because intentional use of force is not an element. Right, but in Hill the defendant admitted that the code had prescribed a run over. It's confusing because the accomplice was the driver of the crime. Right, that's what I'm saying, but the defendant said, yeah, he was going after the victim. Right. So how can you say that that... Well it's just, it wasn't relevant to, what was relevant was whether it endangered the life of the person. And actually in North Carolina, whether it endangers the life of the person, that can be from the perspective of the victim. Doesn't necessarily have to be from the, from the reasonable person perspective. It just has to be from the perspective of the victim. So, you know, it could have been either in that case, but what I'm, what I'm saying is that the facts in Dixon, you know, in that California case, there wasn't a finding of what the state of mind was. It could have been, he said it was accidental, but it didn't matter because... Do we, this, this, I don't mean this flippantly at all, but do we care about California here? Well, I think that... I mean, we're talking about the elements of a North Carolina statute and how North Carolina interprets... The context of other cases of this circuit. I just think it's helpful to see another court that's dealt with a similar factual scenario to say that this is a realistic scenario and actually something similar occurred in, occurred in Hill. Although that sort of gets back to the reasonable probability conundrum that we're presented with. Right. And that's, that's, I'm having, continuing to have a bit of a problem there. Right. And I think there has been some confusion in how that reasonable probability test has been applied, but I, but I do think that aparesiosoria makes clear how it is supposed to be applied. And finally, the government says there's no case in which there's a North Carolina case where there's a robbery with a dangerous weapon involving poison, but I would encourage the court to look at aparesiosoria and also the First Circuit, I believe First Circuit opinion in white that talks about the skewed universe of cases the court has to look at when it's, when it's looking at this reasonable probability test because in North Carolina, only appealed cases wind up being reported and that's all you have to look at. So it makes it really impossible to tell. No, it's just the same skewed universe that Dr. looked at in the Samian's Reha. Right. If the argument does have an unfortunate tendency to go in circles. Right. But the whole, the concept of robbery by poison, I'm wondering if it, if the historical context of those statutes were that a statute was passed because you have a situation that is so atypical of robbery where the victim cannot relinquish possession because of the intimidation or use of force. You see what I'm saying? You mean the state statutes where there was robbery by poisoning? Right. I haven't, I have not looked into that question. My recollection from the two reported state cases that I cited was that it was a general robbery statute and poisoning was found to be sufficient force to violate those statutes. And then in Florida, of course, there's the jury instruction that applies to the general robbery statute. Thank you. Thank you, Ms. Hester. We'll come down and read counsel and then go to the next case.
judges: Robert B. King, Allyson K. Duncan, Barbara Milano Keenan